In the Matter of MICHAEL GOLDSTEIN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 31, 1985

**APPEARANCES OF COUNSEL**

*Jeanne C. O'Rourke* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Nicholas C. Cooper* for respondent.

**OPINION OF THE COURT**

Per Curiam.

On March 13, 1968, the respondent was admitted to practice as an attorney and counselor-at-law in the Second Judicial Department, and, in the past, he has maintained an office for the practice of law in the First Judicial Department.

Respondent does not dispute that, on February 2, 1983, in the United States District Court of the Northern District of Illinois, Eastern Division, he was convicted, by his plea of guilty, of one felony count of knowingly, willfully and unlawfully committing commodity fraud in violation of 7 USC § 23 (b) and § 13 (b) and 18 USC § 2. This crime, according to the Departmental Disciplinary Committee (DDC), is a felony under Federal law, but is not a felony under the laws of this State. Moreover, as a result of his plea of guilty, the respondent was placed on probation for a period of one year, on condition he comply with the general

terms of probation. As of this date, respondent has completed his term of probation.

Subsequently, on December 19, 1984, DDC moved by petition for an order: (a) determining that the crime of which the respondent had been convicted was a "serious crime", as defined by section 603.12 (b) of the rules of this court (22 NYCRR) and Judiciary Law § 90 (4) (d), which, in pertinent part, reads as follows: "the term serious crime shall mean any criminal offense denominated a felony under the laws of any state, district or territory or of the United States which does not constitute a felony under the laws of this state"; (b) suspending respondent, pursuant to Judiciary Law § 90 (4) (f); and (c) directing respondent to "show cause why a final order of suspension, censure or removal from office should not be made", pursuant to Judiciary Law § 90 (4) (g). In his answer to this petition, the respondent, in substance, (1) admitted that he had been convicted of a "serious crime"; (2) requested a hearing, pursuant to Judiciary Law § 90 (4) (h); and (3) opposed DDC's application for respondent's interim suspension.

By our order, dated February 28, 1985 (108 AD2d 710), we suspended respondent from the practice of law, pending a final determination of the petition; and, referred the matter to a Referee, to "take testimony herein, and to report the same, with his opinion thereon, to this Court".

The DDC's case in support of their petition consisted of presenting copies of the following documents, which were marked in evidence: (a) the United States District Court information filed against respondent; (b) the Federal judgment and conviction order; (c) the plea minutes; and (d) the sentencing minutes.

Based upon our examination of the record, the following appear to be the significant facts concerning the respondent's crime. In May 1979, the respondent became house counsel to the First Guarantee Metals Company (FGM), which was located in Miami, Florida. FGM was engaged in the business of selling on margin, by telephone and mail, investments in precious metals, including, but not limited to, gold and silver bullion, and silver and gold coins, to customers located throughout the United States. The United States law enforcement authorities, in substance, charged that the respondent, and FGM's principal officers engaged in a criminal scheme to defraud FGM's customers, who purchased these precious metals, mentioned *supra,* by misrepresenting to their customers that either these commodities or profits would be delivered to them.

Our review of the plea minutes, at pages 8 and 9, discloses these admissions of criminal conduct made by respondent, which reflect on his professional character:

"Q. [by the court]: Could you tell me just very briefly in your own words what you did at First Guaranty (FGM) and the basis for the charge?

"A. [by the respondent]: I aided and abetted First Guaranty, because I was aware and had knowledge that the contracts they were selling were not fully backed by either contract or physical metals, the contracts or what they told the customers.

"Q. When you say the contracts weren't fully backed, are you saying the customers were purchasing physical metals which they were told were in the possession of First Guaranty?

"A. That's correct.

"Q. Down in Florida?

"A. That's correct.

"Q. And you knew they were not in possession of the company?

"A. And that there were no other kinds of backing."

Respondent presented evidence at the hearing; and, that evidence included: testimony from two character witnesses, one of whom was a president of an advertising agency and the other one of whom was a certified public accountant; a copy of a letter from the Assistant United States Attorney (AUSA) of the Northern District of Illinois, Eastern Division, who prosecuted the case against respondent; and, the respondent's testimony in his own behalf.

The AUSA's letter, mentioned *supra,* dated January 6, 1983, was addressed to the respondent's probation officer, and detailed the extent of respondent's cooperation with the Government, pursuant to the negotiated plea.

Incidentally, both FGM principals were sentenced to 12 years' imprisonment.

The report of the Referee, in pertinent part, at page 6, contains these findings and recommendation:

"Respondent has admitted making knowingly false representations to the investing public * * *

"I would, therefore, respectfully suggest that respondent be suspended for a period of six months from February 28, 1985, and that at the expiration of his suspension he be permitted to apply for reinstatement on notice to the * * * [DDC] and upon such conditions as this Court may see fit to impose."

As mentioned, *supra,* the DDC and the respondent both move to confirm the Referee's findings of professional misconduct and his recommendation of a six-month suspension, measured from February 28, 1985, the date of respondent's interim suspension. However, besides the foregoing relief, respondent's counsel also moves in his moving affirmation, at page 4, for the following relief: "Respondent requests that he be immediately reinstated upon the expiration of the term of suspension and upon filing of proof that he has passed the Multistate Professional Responsibility Examination. As the Court is well aware an application for reinstatement processed through the Character Committee very often adds significantly to the actual period of suspension. Considering all of the facts and circumstances herein, including the fact that respondent cannot proceed further with his application for admission to the Florida Bar until this matter is finally concluded, it would seem unfair and contrary to the interests of justice, to require respondent go through the entire reinstatement process."

While we agree with the Referee's findings that respondent is guilty of a "serious crime", we reject his recommendation of punishment as too lenient. The fact that respondent's record as an attorney is otherwise unblemished does not overcome the fact that respondent admitted knowingly participating in a crime in that during the last two weeks of his employment he aided and abetted the fraudulent operation of FGM by making false representations to the inquiring public. We note in passing that respondent did not come forth of his own volition and call the authorities' attention to this fraud, but rather he waited to cooperate with the authorities until their investigation was almost two years old. Furthermore, we find that, in view of the instant facts, we would be unjustified in departing from our usual reinstatement procedures in this case. Before reinstating the respondent, it is important for the protection of the public, that, in addition to passing the multistate professional responsibility examination, respondent establish "by clear and convincing evidence that he has fully complied with * * * [our] order of * * * suspension * * * and that he possesses the character and general fitness to practice law" (Rules of App Div, 1st Dept, 22 NYCRR 603.14 [b] [1]).

Accordingly, the motion of the DDC and the cross motion of respondent are granted only to the extent of confirming the findings of the Referee as to professional misconduct and are otherwise denied; and, it is ordered that respondent is suspended from the practice of law for a period of three years, effective from February 28, 1985, the date of his interim suspension.

MURPHY, P. J., KUPFERMAN, ROSS, ASCH and MILONAS, JJ., concur.

Motion and cross motion granted to the extent of confirming the findings of the Referee as to professional misconduct and otherwise denied, and respondent is suspended from practice as an attorney and counselor-at-law in the State of New York for a period of three years effective February 28, 1985, and until the further order of this court.